1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

8

| | |
|---|---|
| CAROLYN JEAN CONBOY, D.O., | 2:11-CV-1649 JCM (CWH) |
| Plaintiff, | |
| v. | |
| WYNN LAS VEGAS, LLC, dba ENCORE AT WYNN LAS VEGAS, et al., | |
| Defendants. | |

9
10
11
12
13
14
15

16 **ORDER**

17     Presently before the court is defendants Wynn Las Vegas, LLC and Tammy Rogers *et al.*'s

18 motion for partial summary judgment. (Doc. # 93). Plaintiff Carolyn Jean Conboy filed an opposition

19 (doc. # 101), and defendants replied (doc. # 107). Also before the court is defendants' motion for

20 summary judgment as to all of plaintiff's causes of action. (Doc. # 98). Plaintiff filed an opposition

21 (doc. # 110), and defendants replied (doc. # 115).

22 **I.     Factual background**

23     The facts and timeline of events are disputed; however, the court provides only those facts

24 that are relevant to the instant motions. This case arises out of a incident at the Encore hotel on the

25 night of April 29, 2010, and into the early morning of April 30, 2010. (Doc. # 110, Ex. 1). Plaintiff

26 Carolyn Jean Conboy and her husband John Krawiec were staying with the Encore hotel based on

27 a two-day complimentary stay. (Doc. # 110, Ex. 1, ¶ 2). Sometime between 12:15 a.m. and 12:20

28

**James C. Mahan**
**U.S. District Judge**

a.m. on April 30, 2010, Encore hotel security received a phone call regarding a disruption on the 32nd floor of the hotel. (Doc. # 110, Ex. 3, 51:25-52:10: "intoxicated patron in hallway;" doc. # 98, Ex. D, 1: "domestic dispute").

Responding to the call, Encore hotel security first encountered plaintiff's husband, Krawiec, in the elevator lobby bleeding from the head. (Doc. # 98, Ex. D, 1). Hotel security proceeded to room 3229 where security found plaintiff standing outside the door to the room. (Doc. # 98, Ex. C, 88:6-12; doc. # 110, Ex. 1, ¶ 7). The door was locked and plaintiff did not have a way to get into the room. (Doc. # 110, Ex. 1, ¶ 7). There was blood on the handle and broken glass on the floor. (Doc. # 98, Ex. C, 85:7-13; Ex. E).

Plaintiff and hotel security entered the room and found blood and wine stains on the walls, blood on the tile and carpet, and broken beer bottles. (Doc. # 98, Ex. C, 148:15-153:7; Ex. E). Plaintiff was made to sit on the bed in the bedroom. (Doc. # 110, Ex. 1, ¶ 10). Hotel security officer Tammy Rogers grabbed plaintiff's arm while she was seated on the bed. (Doc. # 98, Ex. C, 111:14-15).

Hotel security told plaintiff that she needed to pay for the damages to the room. (Doc. # 98, Ex. C, 88:20-89:1). Plaintiff refused to pay "for anything she did not do and of which she had no knowledge [and had] no idea who did what." (Doc. # 98, Ex. C, 110:18-111:2).

Officers from the Las Vegas Metro Police Department arrived at approximately 1:15 a.m. (Doc. # 98, Ex. D, 2). Plaintiff also refused to pay for the damages to the room in the presence of police officers. (Doc. # 98, Ex. G, 38:12-39:10; Ex. F, 2). It is not clear who placed plaintiff in handcuffs.[1] Plaintiff was arrested for a gross misdemeanor of defrauding an innkeeper. (Doc. # 98, Ex. F, 2). Ultimately, the district attorney denied the charge and at plaintiff's arraignment, the case was dismissed. (Doc. # 110, Ex. 1, ¶ 17).

. . .

---

[1] Las Vegas Metro Police Department officer Brad Van Pamel states that he placed her in handcuffs upon arrival to the room, (doc. # 98, ex. G, 36:2-3), while sergeant James Oakes recalls that plaintiff was already handcuffed prior to the officers' arrival, (doc. # 110, ex. 9, 28:21-29:3). Plaintiff does not recall who placed her in handcuffs. (Doc. # 98, Ex. C, 102:9-20).

James C. Mahan
U.S. District Judge

Hotel staff inventoried and held plaintiff and Krawiec's personal property that was left in the room. (Doc. # 98, Ex. D, 2-3). Plaintiff believes the hotel staff stole chips and cash before returning plaintiff's belongings, (doc. # 110, Ex. 15), and accessed plaintiff's laptop, (doc. # 26, ¶ 34).

Plaintiff filed an amended complaint alleging causes of action for: (1) negligence per se; (2) battery; (3) false imprisonment; (4) slander per se; (5) malicious prosecution; (6) negligence or conversion; (7) invasion of privacy; and (8) negligent hiring and training. (Doc. # 28, 15-16). Defendants' partial motion for summary judgment is based on plaintiff's failure to retain an expert to address the standard of care the Wynn's security staff owed to plaintiff. (Doc. # 93). Defendants' motion for summary judgment incorporates arguments from their partial motion by reference and further argues that each of plaintiff's causes of action fails as a matter of law. (Doc. # 98). The court, therefore, addresses the latter motion and considers the first motion only when incorporated by reference.

**II.    Standard of review**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

1  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

2  make a showing sufficient to establish an element essential to that party's case on which that party

3  will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails

4  to meet its initial burden, summary judgment must be denied and the court need not consider the

5  nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

6      If the moving party satisfies its initial burden, the burden then shifts to the opposing party

7  to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

8  *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing

9  party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

10  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

11  of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

12  Cir. 1987).

13      In other words, the nonmoving party cannot avoid summary judgment by relying solely on

14  conclusory allegations that are unsupported by factual data.  *See Taylor v. List*, 880 F.2d 1040, 1045

15  (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the

16  pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

17  for trial. *See Celotex Corp.*, 477 U.S. at 324.

18      Where a moving party's papers are insufficient to support a motion for summary judgment,

19  or reveal a genuine issue of material fact, summary judgment is inappropriate. *Martinez v. Stanford*,

20  323 F.3d 1178, 1182-83 (9th Cir. 2003).

21  **III.    Discussion**

22      The court addresses each of plaintiff's causes of action in turn.

23      **A.      Negligence per se**

24      Negligence per se serves as a method of establishing the duty and breach elements of a

25  negligence claim. *Cervantes v. Health Plan of Nevada, Inc.*, 263 P.3d 261, 264 n.4 (Nev. 2011). In

26  general, "[a] statutory violation is negligence per se if the injured party belongs to the class of

27  persons whom the statute was intended to protect, and the injury suffered is of the type the statute

28

**James C. Mahan**
**U.S. District Judge**

1    was intended to prevent." *Atkinson v. MGM Grant Hotel, Inc*., 98 P.3d 678, 680 (Nev. 2004). A

2    criminal statute may serve as the basis of a negligence per se claim, *S. Pac. Co. v. Watkins*, 435 P.2d

3    498, 511 (Nev. 1967); however, "in the absence of legislative intent to impose civil liability, a

4    violation of a penal statute is not negligence per se." *Hinegardner v. Marcor Resorts*, 844 P.2d 800,

5    803 (Nev. 1992); *see also Mazzeo v. Gibbons*, 649 F.Supp.2d 1182, 1201 (D.Nev. 2009) (stating that

6    use of criminal statutes that are "intentional in nature do not lend themselves well to a negligence

7    theory of recovery.").

8         Defendants argue that plaintiff's claim fails as a matter of law because she is attempting to

9    use a criminal statute as a standard for civil liability. (Doc. # 98, 12:7-8). Plaintiff argues that the

10   case cited by defendants, *Mazzeo*, is not binding on this court and the basis of the claim is whether

11   this court finds that the statute was designed to protect people in plaintiff's position. (Doc. # 110,

12   26:12-15).

13        Here, plaintiff's negligence per se cause of action is based on her allegation that hotel security

14   used coercion and extortion in attempts to have plaintiff agree to pay for damage to the hotel room.

15   Plaintiff relies on two criminal statutes in support of her claim, NRS 207.190, coercion, and NRS

16   205.322, extortionate collection of debt.

17        The court does not find plaintiff's argument compelling. While surely this court is not bound

18   by other district court decisions, this court is bound by the Nevada Supreme Court when applying

19   Nevada law. *Mazzeo* correctly articulates the state of the law in Nevada for negligence per se. And

20   the court is bound by this standard. After reviewing these statutes, it is clear that neither statute

21   provides for a civil remedy and that the Nevada legislature did not intend to impose civil liability

22   under these statutes. On this basis, the court declines to impose negligence liability under these

23   criminal statutes.

24        Thus, defendants have met their burden and demonstrated that they are entitled to judgment

25   as a matter of law on this claim.

26   . . .

27   . . .

28

**James C. Mahan**
**U.S. District Judge**                                          - 5 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### B.   Battery

Under Nevada law, battery is "any willful and unlawful use of force or violence upon the person of another." NRS § 200.400(a); *see also Wright v. Starr,* 179 P. 877, 879 (Nev. 1919) (defining battery as "[a]ny unlawful beating, or other wrongful physical violence or constraint, inflicted on a human being without his consent").

Defendants contend that plaintiff is uncertain that hotel security officer Rogers touched plaintiff and that this is insufficient to establish battery. (Doc. # 98, 14:4-6). Plaintiff states that she did testify that she is "a hundred percent sure" that hotel security officer Rogers grabbed her arm. (Doc. # C, 111:14-15). Defendants argue that even if officer Rogers grabbed or held plaintiff, that it was minor in nature and not unreasonable under the circumstances. (Doc. # 98, 14:7-9), relying on *Billingsley v. Stockmen's Hotel, Inc.,* 901 P.2d 141 (1995), to establish that an innkeeper is permitted to use reasonable force to eject a trespasser and/or to respond to a suspected criminal event. *Id.* at 145.

The court finds that defendants improperly broaden the language of *Billingsley* to encompass the factual situation presented. From the court's reading, *Billingsley* appears to be limited to those situations that involve trespassers or where the hotel is attempting to evict a person from the premises of a hotel. Here, there has been no evidence presented to establish that plaintiff was a trespasser or that hotel security officer Rogers was touching plaintiff in attempts to evict plaintiff from the premises. On this basis, the court declines to expand the reading of a Nevada Supreme Court case.

Therefore, defendants have failed to establish that they are entitled to judgment on this claim.

### C.   False imprisonment

Under Nevada law, to establish a false imprisonment claim, the plaintiff must show she was "restrained of [her] liberty under the probable imminence of force without any legal cause or justification." *Garton v. City of Reno,* P.2d 1227, 1228 (Nev. 1986) (quotation omitted); *Lerner Shops of Nev., Inc. v. Marin*, 423 P.2d 398, 400 (Nev. 1967). The plaintiff need not establish lack of probable cause in her case in chief. *Garton*, 720 P.2d at 1229 n. 1.

James C. Mahan
U.S. District Judge

- 6 -

1    Rather, justification for the detention, such as probable cause to effect an arrest, is an
2    affirmative defense. *Marschall v. City of Carson*, 86 Nev. 107, 464 P.2d 494, 497 (Nev. 1970).
3    Probable cause exists when there is "reasonably trustworthy information or facts and circumstances
4    that are sufficient in themselves to warrant a person of reasonable caution to believe that a crime has
5    been . . . committed by the person to be arrested." *State v. McKellips*, 49 P.3d 655, 660 (Nev. 2002)
6    (citation omitted).

7    Whether plaintiff was detained is not disputed. Both defendants and plaintiff admit that
8    Encore hotel security detained plaintiff in her room for about one hour upon discovering plaintiff
9    outside her room early that morning.  (Doc. # 98, 15:10-13; doc. # 110, 29:11-14). The issue is
10   whether defendants had sufficient probable cause to detain plaintiff.[2]

11   Defendants argue that they had probable cause to detain plaintiff for domestic battery with
12   a deadly weapon. Upon arrival, Encore hotel security found plaintiff's husband bleeding from the
13   head and plaintiff standing in the hallway locked out of her room with a broken beer bottle by the
14   door and blood on the door handle. (Doc. # 98, Ex. D; Ex. C, 88:6-12, 164:10-165:1, 85:7-13; Ex.
15   E). Defendants also point out that their expert holds the opinion that hotel security acted reasonably
16   given the situation that they were confronted with at the time of the incident. (Doc. # A, 11).

17   Plaintiff contends that hotel security officer Rogers did not make a determination of probable
18   cause and did not know if she had probable cause to believe that plaintiff battered her husband. (Doc.
19   # 110, Ex. 3, 57-59). Specifically, it appears that hotel security officer Rogers deferred the
20   determination of probable cause to the police. (Doc. # 110, Ex. 3, 58:17-24).

21   The court finds that plaintiff has satisfied her burden to establish that there is a "claimed
22   factual dispute" that requires a trier of fact "to resolve the parties' differing versions of the truth at
23   trial." *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).
24   Therefore, there remains a genuine issue of material fact as to this claim–that is, whether Encore
25   hotel security satisfies the affirmative defense of probable cause.

26

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
          [2] It seems that defendants' basis for detaining plaintiff was based on what appeared to be a domestic battery and
28   not for defrauding an innkeeper. Therefore, the court limits its analysis only as to probable cause of domestic battery.

James C. Mahan
U.S. District Judge                                    - 7 -

1        **D.        Slander per se**

2            In order to establish a prima facie case of defamation, a plaintiff must prove: (1) a false and

3    defamatory statement by defendant concerning the plaintiff; (2) an unprivileged publication to a third

4    person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages. *Chowdhry*

5    *v. NLVH, Inc.*, 109 Nev. 478, 483, 851 P.2d 459, 462 (1993). In actions for slander, spoken

6    statements have been held to be defamatory per se where they impute that (1) the plaintiff has

7    committed a crime; (2) the plaintiff is unfit to perform his business or employment; (3) the plaintiff

8    has contracted a loathsome disease; or (4) the plaintiff is unchaste. *Branda v. Sanford*, 637 P.2d

9    1223, 1225 (Nev. 1981).

10           Defamatory statements in Nevada not only include words, but also actions that communicate

11   defamation. *K–Mart Corp. v. Washington*, 866 P.2d 274, 282 (Nev. 1993), *receded from on other*

12   *grounds by Pope v. Motel 6*, 114 P.3d 277 (Nev. 2005). In *K–Mart*, the plaintiff was handcuffed and

13   marched through the store by K–Mart employees. *Id.* The Nevada Supreme Court concluded that the

14   act of handcuffing the plaintiff and marching him through the store imputed by pantomime that he

15   had committed the crime of shoplifting. *Id.* at 283.

16           The court noted that "[w]ords or conduct or the combination of words and conduct can

17   communicate defamation." *Id.* Additionally, the court held that because the act imputed that the

18   plaintiff had committed a crime, the action was "unquestionably slander per se,"and therefore

19   damages were presumed. *Id.* at 283-84.

20           Plaintiff's slander per se claim is based on the allegation that "Defendants slandered Plaintiff

21   per se by parading her in public in handcuffs causing by insinuation and innuendo Plaintiff to be

22   accused of a criminal act . . . ." (Doc. # 28, ¶ 46). Defendants argue that it was the police that

23   handcuffed plaintiff after she refused to pay for damage to the room. (Doc. # 98, 16:12-14). Plaintiff

24   states, however, that "[t]here is a question of who originally handcuffed [plaintiff] and led her to the

25   Encore security room." (Doc. # 110, 23:7-8). Further, plaintiff argues that it does not matter who

26   handcuffed plaintiff as hotel security officer Rogers "caused the police to arrest [plaintiff] and place

27   her in handcuffs." (Doc. # 110, 23:9-10). Defendants argue that it was the polices officer's own

28

**James C. Mahan**
**U.S. District Judge**

1    determination of the scene that caused plaintiff to be placed in handcuffs. (Doc. # 98, Ex. G, 36:2-
2    18).

3        Since the basis of plaintiff's slander per se claim is based on *who* handcuffed plaintiff and/or
4    *who* caused plaintiff to be handcuffed; there remains a genuine issue of material fact as to whether
5    Encore hotel security officers or police officers handcuffed plaintiff. Thus, defendants have not met
6    their burden to establish that they are entitled to judgment in their favor as to this claim.

7        **E.    Malicious prosecution**

8        Under Nevada law, the plaintiff must satisfy four elements to make out a prima facie case
9    for malicious prosecution: (1) want of probable cause to initiate the prior criminal proceeding; (2)
10   malice; (3) termination of the prior criminal proceedings; and (4) damage. *Chapman v. City of Reno*,
11   455 P.2d 619, 620, (Nev. 1969); *see also Jordan v. Bailey*, 994 P.2d 828, 834, (Nev. 1997). Proof
12   of lack of probable cause may denote malice. *Chapman*, 455 P.2d at 620.

13       Plaintiff argues that the criminal action against her for defrauding an innkeeeper in violation
14   of NRS 205.445 was terminated in her favor and that she suffered damages as a result of the charges
15   brought against her. (Doc. # 110, 28:25-26). Defendants do not dispute this. Thus, the issue is
16   whether defendants acted with want of probable cause and acted with malice.[3]  Under Nevada law,
17   want of probable cause is judged by an objective test. *Jordan*, 994 P.2d at 834.

18       Defrauding proprietor of hotel, inn, restaurant, motel or similar establishment states:

19       1. It is unlawful for a person:

20           (a) To obtain food, foodstuffs, lodging, merchandise or other accommodations at any
             hotel, inn, trailer park, motor court, boardinghouse, rooming house, lodging house,
21           furnished apartment house, furnished bungalow court, furnished automobile camp,
             eating house, restaurant, grocery store, market or dairy, without paying therefor, with
22           the intent to defraud the proprietor or manager thereof;

23           (b) To obtain credit at a hotel, inn, trailer park, motor court, boardinghouse, rooming
             house, lodging house, furnished apartment house, furnished bungalow court,
24           furnished automobile camp, eating house, restaurant, grocery store, market or dairy
             by the use of any false pretense; or
25
             (c) After obtaining credit, food, lodging, merchandise or other accommodations at
26

27       _____

         [3] Since plaintiff was only arrested for defrauding an innkeeper in violation of NRS 205.445, the court does not
28   address probable cause or malice in relation to domestic battery.

**James C. Mahan**                                              - 9 -
**U.S. District Judge**

1

2

3

> a hotel, inn, trailer park, motor court, boardinghouse, rooming house, lodging house, furnished apartment house, furnished bungalow court, furnished automobile camp, eating house, restaurant, grocery store, market or dairy, to abscond or surreptitiously, or by force, menace or threats, to remove any part of his or her baggage therefrom, without paying for the food or accommodations.

4

> 2. A person who violates any of the provisions of subsection 1 shall be punished:

5

6

7

> (a) Where the total value of the credit, food, foodstuffs, lodging, merchandise or other accommodations received from any one establishment is $650 or more, for a category D felony as provided in NRS 193.130. In addition to any other penalty, the court shall order the person to pay restitution.

8

> (b) Otherwise, for a misdemeanor.

9

10

11

12

13

> 3. Proof that lodging, food, foodstuffs, merchandise or other accommodations were obtained by false pretense, or by false or fictitious show or pretense of any baggage or other property, or that the person refused or willfully neglected to pay for the food, foodstuffs, lodging, merchandise or other accommodations, or that the person gave in payment for the food, foodstuffs, lodging, merchandise or other accommodations negotiable paper on which payment was refused, or that the person absconded without paying or offering to pay for the food, foodstuffs, lodging, merchandise or other accommodations, or that the person surreptitiously removed or attempted to remove his or her baggage, is prima facie evidence of the fraudulent intent mentioned in this section.

14

> 4. This section does not apply where there has been an agreement in writing for delay in payment for a period to exceed 10 days.

15

NRS 205.244.

16

Defendants argue that upon entering the hotel room, defendants discovered broken glass,

17

blood, and wine stains in the room. (Doc. # 98, Ex. C, 85:7-13, 148:15-153:7; Ex. E). Plaintiff

18

acknowledged the damage to the room to be around $1,000. (Doc. # 98, Ex. C, 108:24-109:5).[4]

19

Further, defendants contend that plaintiff refused to pay "for anything she did not do and of which

20

she had no knowledge [and had] no idea who did what." (Doc. # 98, Ex. C, 110:18-111:2).

21

Plaintiff argues that she did not know the full extent of the damage as her position on the bed

22

limited her view of other parts of the room. (Doc. # 110, Ex. 1, ¶ 10). Plaintiff also argues that upon

23

check-in, the Encore hotel took an impression of plaintiff's credit card and plaintiff signed an

24

agreement that stated:

25

. . .

26

27

28

---

[4] NRS 205.244 was amended by the 2011 legislature in Assembly Bill 142 to reflect an increase from $250 to $650. There were no other revisions to the statute. The version of the statute at the time of the incident read $250.

James C. Mahan
U.S. District Judge

1
2

> It is understood and agreed upon that you will be responsible for payment of any damages to the guest suite and/or rooms that occur during your stay. Charges will be made to your credit card for such damages.

3   (Doc. # 110, Ex. 2). Further, plaintiff contends that hotel security officer Rogers knew that hotel

4   guests signed this form. (Doc. # 110, Ex. 3, 44:14-45:6). However, officer Rogers stated that this

5   form is only used to cover minor damage to the room. (Doc. # 110, Ex.3, 45:7-9)..

6          The court finds that although plaintiff refused to pay for the damages to her guest room, it

7   not clear whether there was probable cause to charge plaintiff with defrauding an innkeeper if she

8   had already signed an agreement that appeared to cover such charges. Further, it is not clear who

9   initiated criminal proceedings against plaintiff. As such, there remains a genuine issue of material

10  fact as to the impact this agreement had on defendants' determination of probable cause for

11  plaintiff's liability under NRS 250.244.

12         **F.     Negligence or conversion**

13         Plaintiff alleges that defendant either negligently failed to safeguard plaintiff's property or

14  intentionally converted plaintiff's property.

15         "To prevail on a negligence theory, a plaintiff generally must show that: (1) the defendant

16  owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal

17  cause of the plaintiff's injury; and (4) the plaintiff suffered damages." *Bower v. Harrah's Laughlin,*

18  *Inc.*, 215 P.3d 709, 724 (Nev. 2009)*.*

19         "Conversion is 'a distinct act of dominion wrongfully exerted over another's personal

20  property in denial of, or inconsistent with [that person's] title or rights [to the property].'" *Evans v.*

21  *Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000) (*quoting Wantz v. Redfield*, 326 P.2d

22  413, 414 (Nev. 1958)). Conversions are divided between four classes: (1) wrongful taking, (2)

23  alleged assumption of ownership, (3) illegal user or misuser, and (4) wrongful detention. *Robinson*

24  *M. Co. v. Riepe*, 161 P. 304, 305 (Nev. 1916).

25         Defendants argue that plaintiff cannot state with certainty how much cash and casino chips

26  she had before she was arrested. (Doc. # 98, 21:5-6). Defendants also argue plaintiff walked away

27  from the casino that night with no chips. (Doc. # 98, Ex. J, 30:20-31:5). Defendants rely on the

28

**James C. Mahan**
**U.S. District Judge**

- 11 -

1   Wynn's Lost & Found returned item report (exhibit K), which defendants contend to be
2   authenticated by Trish Matthieu. However, there is no affidavit authenticating exhibit K and the
3   court will not consider exhibits that are not authenticated. *Orr v. Bank of America*, 285 F.3d 764,
4   773, 778 (9th Cir. 2002).

5        Without evidence stating what was inventoried by the Encore hotel, there remains a genuine
6   issue of material fact as to whether defendants were negligent and/or converted plaintiff's property.
7   Further, plaintiff's claim appears to be based on the premise that her cash and chips were not
8   inventoried. (Doc. # 110, 27:10-11). Evidence of what was logged in the returned item report would
9   not defeat plaintiff's claim if based on this contention. Thus, because defendants have not met their
10  burden, the court need not consider plaintiff's evidence on this issue. Therefore, defendants are not
11  entitled to summary judgment on this claim.

12       **G.**    **Invasion of privacy**

13  Plaintiff alleges an invasion or privacy based on NRS 205.477(2), which states:

14  Except as otherwise provided in subsections 3 and 4, a person who knowingly,
    willfully, maliciously and without authorization uses, causes the use of, accesses,
15  attempts to gain access to or causes access to be gained to a computer, system,
    network, telecommunications device, telecommunications service or information
16  service is guilty of a gross misdemeanor.

17  NRS § 205.477(2). This is a criminal statute and there is no civil penalty under NRS 205.477(2).
18  Thus, the court declines to impose civil liability under this criminal statute.

19       However, to the extent that plaintiff alleges a free standing claim for invasion of privacy,
20  plaintiff must prove (1) an intentional intrusion (physical or otherwise); (2) on the solitude or
21  seclusion of another; (3) that would be highly offensive to a reasonable person. *People for Ethical*
22  *Treatment of Animals v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1279 (Nev. 1995) *holding modified*
23  *by City of Las Vegas Downtown Redevelopment Agency v. Hecht*, 940 P.2d 127 (Nev. 1997).

24       Defendants argue that plaintiff has not provided sufficient evidence that defendants engaged
25  in an intentional intrusion on plaintiff's laptop files. The only competent evidence provided to the
26  court is plaintiff's husband's statement that he did not examine the files, although it was his intention
27  to do so. (Doc. # 98, Ex. B, 109:24-110:2). In plaintiff's opposition, she does not address this claim.

28

James C. Mahan
U.S. District Judge

1    Defendants have demonstrated that plaintiff has failed to make a showing sufficient to

2    establish an element essential to her case on which she bears the burden of proof at trial. *See Celotex*

3    *Corp.*, 477 U.S. at 323–24. Therefore, the court finds it appropriate to grant summary judgment in

4    favor of defendants on this claim.

5              **H.      Negligent hiring and training**

6              "The tort of negligent hiring imposes a general duty on the employer to conduct a reasonable

7    background check on a potential employee to ensure that the employee is fit for the position."

8    *Burnett v. C.B.A. Security Service*, 820 P.2d 750, 752 (Nev. 1991). An employer breaches this duty

9    when it hires an employee even though the employer knew, or should have known, of that

10   employee's dangerous propensities. *Hall v. SSF, Inc.*, 930 P.2d 94, 98 (Nev. 1996); *see also* Kelley

11   *v. Baker Protective Services, Inc.*, 401 S.E.2d 585, 586 (Ga. App. 1991).

12             As is the case in hiring an employee, the employer has a duty to use reasonable care in the

13   training, supervision, and retention of his or her employees to make sure that the employees are fit

14   for their positions. *Hall,* 930 P.2d at 99, *quoting* 27 Am.Jur.2d *Employment Relationship* §§ 475-76

15   (1996).

16             Defendants' argument turns on the reasonableness of the hotel security staff's belief that a

17   domestic battery took place and that plaintiff was properly detained until the police arrived. (Doc.

18   # 98, 23:23-25). Defendants contend that Encore hotel security staff did not do anything wrong and

19   for that reason, plaintiff cannot establish a negligent hiring or training cause of action. (Doc. # 98,

20   23:26-28).

21             As previously discussed, the court finds that there are still triable issues of fact on whether

22   defendants had probable cause to touch and to detain plaintiff. As such, defendants' argument based

23   on similarly deficient evidence does not establish that defendants are entitled to judgment in their

24   favor on this claim.

25   . . .

26   . . .

27   . . .

28

**James C. Mahan**
**U.S. District Judge**                                    - 13 -

1   **IV.      Conclusion**

2          According to the foregoing,

3          IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants Wynn Las

4   Vegas, LLC and Tammy Rogers *et al.*'s motion for partial summary judgment (doc. # 93). be, and

5   the same hereby is, DENIED.

6          IT IS FURTHER ORDERED that defendants Wynn Las Vegas, LLC and Tammy Rogers *et*

7   *al.*'s motion for summary judgment as to all of plaintiff's causes of action (doc. # 98) be, and the

8   same hereby is, GRANTED in part and DENIED in part.

9          IT IS FURTHER ORDERED that defendants Wynn Las Vegas, LLC and Tammy Rogers *et*

10  *al.* are entitled to summary judgment in their favor as to plaintiff's first cause of action for

11  negligence per se, and as to plaintiff's seventh cause of action for invasion of privacy.

12         DATED November 14, 2012.

13

14  _____

15  **UNITED STATES DISTRICT JUDGE**

16

17

18

19

20

21

22

23

24

25

26

27

28