1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

CAROLYN JEAN CONBOY, D.O.,

            Plaintiff,

v.

WYNN LAS VEGAS, LLC, dba
ENCORE AT WYNN LAS VEGAS et
al.,

            Defendants.

2:11-CV-1649 JCM (CWH)

**ORDER**

      Presently before the court are defendants Wynn Las Vegas, LLC and Tammy Rogers' eleven motions in limine. (Docs. # 127-138).[1] Plaintiff Carolyn Jean Conboy responded to motions 1-3 in one opposition. (Doc. # 145). Defendants replied to motion 3. (Doc. # 160). Plaintiff responded to motions 4-7 in one opposition. (Doc. # 147). Defendants did not reply. Plaintiff responded to motions 8-10 in one opposition. (Doc. # 148). Defendants replied to motions 9-10. (Docs. # 158/161, 159). Plaintiff responded to motion 11. (Doc. # 149). Defendants did not reply.

## I.    Legal standard

      "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. U.S.*, 469 U.S. 38, 41 n.4 (1980). Judges have broad discretion when ruling on motions *in limine*. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see also*

---

      [1] Doc. # 133 is a corrected image of doc. # 132.

**James C. Mahan
U.S. District Judge**

1   *Trevino v. Gates,* 99 F.3d 911, 922 (9th Cir. 1999) ("The district court has considerable latitude in

2   performing a Rule 403 balancing test and we will uphold its decision absent clear abuse of

3   discretion").

4       "[*I*]*n limine* rulings are not binding on the trial judge [who] may always change his mind

5   during the course of a trial." *Ohler v. United States,* 529 U.S. 753, 758 n.3 (2000); *accord Luce,* 469

6   U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence

7   unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that

8   all evidence contemplated by the motion will be admitted at trial. Denial merely means that without

9   the context of trial, the court is unable to determine whether the evidence in question should be

10  excluded." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp.2d 844, 846 (N.D. Ohio 2004).

11  **II.    Discussion**

12      The court will address only those facts which are pertinent to resolution of the instant

13  motions in limine.

14      **A.      Motion in limine 1 (doc. # 127)**

15          **1.      All evidence generated by or relating to plaintiff's investigator Eddie**

16                  **LaRue**

17      Pursuant to the Federal Rule of Civil Procedure ("FRCP") 26 a party must disclose all

18  witnesses to the other party during discovery. If a party fails to provide information or identify any

19  other witness as required by FRCP 26(a) or (e), then FRCP 37© provides for sanctions. These

20  sanctions include that:

21          the party is not allowed to use that information or witness to supply evidence on a
            motion, at a hearing, or at trial, unless the failure was substantially justified or is
22          harmless.

23  FED.R.CIV.P. 37(c)(1).

24      In this motion in limine, defendants move to exclude all evidence relating to plaintiff's

25  investigator, Eddie LaRue, because it is irrelevant, untimely, and/or unnecessarily duplicative

26      The discovery deadline was set for April 15, 2012. (Doc. # 10). This deadline was extended

27  to June 15, 2012, but was limited to "Defendant conducting the PMK's that were delayed and

28

**James C. Mahan**
**U.S. District Judge**                                    - 2 -

1   discovery related to Ms. Rogers." (Doc. # 55). Plaintiff added LaRue as a witness in a supplemental

2   FRCP 26(a)(1) notice on May 31, 2012. (Doc. # 127-1, :314). This supplement fell outside the

3   discovery deadline and therefore is untimely unless failure was substantially justified or is harmless.

4       In this case, the court finds that the disclosure's untimeliness harmless. Although the

5   supplement was late, there has been a substantial amount of time for defendants to investigate the

6   matter prior to trial. Further, under FRE 403, the court does not find that defendants would be

7   prejudiced neither by LaRue's testimony nor his pictures offered into evidence. Defendants have had

8   access to these pictures since plaintiff's supplemental disclosure in May 2012.

9       Additionally, the court finds this information relevant. The pictures objected to by

10  defendants, on the grounds of duplicity and a waste of judicial resources, may give the jury a better

11  understanding of the layout of room 3229.[2] Although defendants argue that these pictures serve only

12  to duplicate evidence that can be obtained from pictures already taken at the scene of the incident;

13  LaRue's pictures may help the jury orient plaintiff's perspective while in the hotel room during the

14  incident.

15      For the above reasons, the court finds LaRue's pictures and testimony are admissible.

16      **2.    Evidence regarding plaintiff's claim that defendant accessed her laptop**

17      Plaintiff's claim for invasion of privacy was dismissed in an earlier stage in litigation. (Doc.

18  # 116). Both parties agree that evidence regarding this claim is no longer relevant.  Therefore, all

19  evidence regarding defendants' alleged access of plaintiff's laptop is inadmissible.

20      **3.    Plaintiff's qualification as a doctor and her marketing materials**

21      Defendants contend that evidence of plaintiff's medical degree and relating documents,

22  including marketing materials, should be excluded under FRE 403 as this information is irrelevant

23  and unnecessarily duplicative. Defendants argue that they have already stipulated to the fact that

24  plaintiff is a doctor and was in Las Vegas at the time of the incident for a medical conference.

25  Defendants argue that the existence of the stipulation makes this evidence irrelevant and

26  unnecessarily duplicative.

27  _____

28      [2] For photos objected to by defendant *see* doc. # 127-1, Exhibit B.

**James C. Mahan**
**U.S. District Judge**

1   Stipulations alone, however, do not eliminate the relevance of evidence offered by another

2   party. The evidence covered by these stipulations is still relevant under FRE 401 and 402. However,

3   the existence of a stipulation may affect the balance of unfair prejudice and probative value under

4   FRE 403.

5   Because the stipulation does not necessarily make this evidence irrelevant and/or

6   unnecessarily duplicative, evidence of plaintiff's qualifications and marketing materials is admissible

7   at this time.

8   **4.      Plaintiff's documents labeled 016 through 023 relating to stay at the**

9   **Wynn and Bates document labeled WYNN0284**

10   Similar to plaintiff's qualifications and marketing materials, defendants have stipulated to

11   the fact that plaintiff stayed at the Encore in room 3229 and went to jail following her arrest by

12   Metro. Defendants argue that this evidence should be excluded under FRE 403 because it is

13   irrelevant and unnecessarily duplicative.

14   Plaintiff however, argues that this evidence offers additional information that was not

15   necessarily stipulated to, including: that she went through the standard check-in procedures, that she

16   had her credit card run and signed a document authorizing her credit card to be charged for any

17   damage to the room, that she was assigned room 3229 and issued a key, and that after plaintiff's

18   arrest, the Encore had the nerve to call her their "valued guest". Further, plaintiff argues that she

19   should be able to testify and submit evidence of what it was like to be arrested as well as her

20   experience afterwards in regards to the bail bondsman and the amount her bail was set at.

21   After examining the evidence, the court does not deem these documents as unfairly

22   prejudicial, irrelevant, or duplicative. The stipulation that defendants have accepted does not present

23   all of the nuances that this evidence could have at trial. Because of this, and the connection that this

24   evidence may have with other facts, the court finds this evidence admissible at this time.

25   Therefore, defendants' motion in limine no. 1 is GRANTED in part and DENIED in part.

26   Defendants' motion is DENIED as to the testimony and evidence of LaRue, the introduction of the

27   plaintiff's qualifications and marketing materials, and as to documents labeled 016 through 023 and

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

WYNN0284. Defendants' motion in limine is GRANTED as to evidence that defendants accessed plaintiff's laptop.

**B.     Motion in limine 2 (doc. # 128)**

**1.     Plaintiff excluded from offering expert testimony**

Under FRCP 26(a)(2), parties have an obligation to designate and disclose expert witnesses. FRCP 37 provides that "if a party fails to make disclosures or to supplement responses as required by Rule 26(a), that party 'shall not present at trial or in motions any evidence not so disclosed, unless there is 'substantial justification' for the failure to disclose or the 'failure is harmless.''" *MacArthur v. Star Farm Fire and Cas. Ins. Co.*, CV-S-04-0598-JCM-PAL, 2004 WL5506688, *2 (D. Nev. 2004) (*citing Continental Lab. Prod., Inc. V Medax Int'l., Inc.*, 195 F.R.D. 675, 676 (S.D. Cal. 2000) and FRCP 37(c)(1)).

Plaintiff neither disclosed an expert witness before the discovery deadline nor does plaintiff dispute the absence of any expert witness on her part. Therefore, under FRCP 37, evidence as to the introduction of new expert testimony by the plaintiff is inadmissible.

**2.     Eddie LaRue's expert testimony or opinion**

As addressed above, because plaintiff has not offered any expert testimony in her discovery, she will be unable to offer any expert testimony or opinion at this trial. However, plaintiff does not contend that LaRue is an expert.[3] LaRue is not intended to provide an expert opinion, and the propositions stated by the plaintiff will not require expert training or knowledge to verify. Consequently, should LaRue make statements that qualify as an expert opinion at trial, these statements are objectionable.

Therefore, defendants' motion in limine no. 2 is GRANTED as to the exclusion of the introduction of expert testimony by plaintiff and the exclusion of expert testimony that may be offered by LaRue.

---

[3] Though defendants claim that LaRue was testimony is being offered as expert testimony, plaintiff did not assert this fact, and plaintiff does not qualify him as an expert.  Further, according to the plaintiff, LaRue's testimony is to be only factual statements, not opinion statements. (Doc. # 145). LaRue is not expected to give information under FRE 702, 703, or 705, which governs how experts may present evidence.

1        **C.      Motion in limine 3 (doc. # 129)**

2        Defendants argue that plaintiff should be precluded from offering lay opinion or argument

3   to establish the standard of care because expert testimony is required to establish the standard of care

4   as to security professionals. (Doc. # 129).

5        Under Nevada "[i]t is well settled that the standard of care must be determined by expert

6   testimony unless the conduct involved is within the common knowledge of laypersons." *Bialer v.*

7   *St. Mary's Hospital*, 83 Nev. 241 (1967). "Where . . . the service rendered does not involve esoteric

8   knowledge or uncertainty that calls for the professional's judgment, it is not beyond the knowledge

9   of the jury to determine the adequacy of the performance." *See Aetna Insurance Co. v. Hellmuth,*

10  *Obata, Kassabaum Inc.*, 392 F.2d 472, 478 (8th Cir. 1968).

11       Defendants argue that the "standard of care" is not something within the common knowledge

12  of a lay person and that an expert witness is required to establish the standard of care, therefore

13  requiring the court to preclude plaintiff from offering her lay opinion to establish the standard of

14  care. (Doc. # 129, 7:9). Plaintiff, however, argues that neither plaintiff nor defendants should be able

15  to offer evidence of the applicable standard of care because it is already covered by the stock jury

16  instruction of what constitutes negligence and probable cause, and that the jury is qualified to make

17  these decisions. (Doc. # 145, 20:15).

18       Although defendants argue that an expert witness is required to establish the standard of care

19  for private security, they do not cite any precedent that is binding upon this court.[4] While Nevada

20  has held that the standard of care must be determined by an expert in medical malpractice,[5] not all

21  circumstances require an expert.[6]

22

23       [4] The court acknowledges that defendants have cited both *Parker v. Grand Hyatt Hotel*, 124 F. Supp.2d 79, 90 (D.D.C. 2000), and *Edwards v. Okie Dokie. Inc.*, 473 F. Supp.2d 31, 46 (D.D.C. 2007), for the standard of care. These are not binding.

24

25       [5] *See* NRS 41A.100(1); *see Beattie v. Thomas*, 99 Nev. 579, 584 (1983); *see also Stevens v. Duxbury*, 97 Nev. 517 (1981).

26

27       [6] *See Daniel, Mann, Johnson & Mendenhall v. Hilton Hotels Corp.*, 98 Nev. 113, 115 (1982) (holding that a surveyor's services do "not involve esoteric knowledge or uncertainty that calls for the professional's judgment," and therefore that it was not beyond the knowledge of the jury to determine the adequacy of the performance and consequent breach of contract).

28

James C. Mahan
U.S. District Judge

- 6 -

1   As such, establishing the standard of care in regards to the conduct of private security does

2   not require an expert in Nevada. Thus, defendants' expert testimony, as well as plaintiff's opinion

3   testimony, are admissible.

4   Therefore, defendants' motion in limine no. 3 is DENIED.

5   **D.      Motion in limine 4 (doc. # 130)**

6   Defendants move to exclude the testimony of Karen Vogel, Steve Conboy, and Pat Nanda

7   (collectively referred to as "the three witnesses") for three reasons under FRE 402, 403, 801, and

8   802. (*See generally* doc. #130).

9   The testimony of the three witnesses in dispute derives from the telephone conversations each

10  had with plaintiff at different stages during the night in question. (Doc. # 130, 6).

11  First, defendants argue that this court should exclude the testimony of the three witnesses

12  because it is inadmissible hearsay. (Doc. #130, 6). Defendants contend this evidence is inadmissible

13  hearsay because it is second-hand testimony being used for the truth of matter asserted. (Doc. # 130,

14  6-7). Moreover, defendants state that there is no viable exception to the hearsay rule to make the

15  testimony of the three witnesses admissible. (Doc. # 130, 7:5-7).

16  Second, defendants argue the evidence is irrelevant and should be excluded under FRE 401

17  or 402, since it is not first-hand evidence. (Doc. # 130, 7).

18  Third, defendants state, in the alternative, that even if this court finds the evidence as having

19  some level of relevancy, it should be excluded under FRE 403 as unfairly prejudicial. (*See* doc. #

20  130, 7-8). Defendants believe the evidence to be prejudicial because it anticipates plaintiff using it

21  only to "cement [p]laintiff's version of the events in the minds of the jurors." (Doc. # 130, 8:3).

22  Plaintiff does not oppose defendants' argument that the evidence is hearsay. However,

23  plaintiff contends that the testimony of the three witnesses is admissible hearsay under FRE 803(1),

24  present sense impression, and FRE 803(2), excited utterance. (*See* doc. #147, 16-18).

25          **1.      Does the testimony of the three witnesses qualify as an exception to**

26                  **hearsay under FRE 803(1)?**

27  Under FRE 803(1) present sense impressions "are not excluded by the rule against hearsay,

28

**James C. Mahan**
**U.S. District Judge**

- 7 -

1    regardless of whether the declarant is available as a witness." FED.R.EVID. 803. A present sense

2    impression is a "statement describing or explaining an event or condition, made while or

3    immediately after the declarant perceived it." FED.R.EVID. 803(1). The underlying theory of the

4    present sense impression exception is that the "substantial contemporaneity of event and statement

5    negate the likelihood of deliberate or conscious misrepresentation." FED.R.EVID. 803(1) advisory

6    committee note.

7        In making the determination whether a present sense impression is admissible, courts must

8    weigh three factors: contemporaneousness, chance for reflection, and relevance. *United States v.*

9    *Ponticelli,* 622 F.2d 985, 991 (9th Cir. 1980) (*overruled on other grounds by United States v. De*

10   *Bright,* 730 F.2d 1255 (9th Cir. 1984)). In order to qualify as a present sense impression the "out-of-

11   court statement must be nearly contemporaneous with the incident described and made with little

12   chance for reflection." *Bemis v. Edwards,* 45 F.3d 1369, 1372 (9th Cir. 1995) (finding that a

13   statement from a 911 tape in which the caller was relaying information from observers of an event,

14   which he himself did not observe, met the above requirements but was still inadmissible due to

15   caller's failure to personally perceive the events he was describing). Finally, the declarant, but not

16   the witness who overhears the declarant, must "have personal knowledge of the events described."

17   *United States v. Murillo,* 288 F.3d 1126, 1137 (9th Cir. 2002) (*quoting Bemis*, 45 F.3d at 1373).

18       Here, plaintiff describes Vogel as being privy to present sense impressions[7] occurring in the

19   hotel room and jail cell, via telephone calls from plaintiff. (Doc. #147, 16). Additionally, plaintiff

20   alleges that Conboy and Nanda heard present sense impressions via the telephone in relation to

21   plaintiff's time in jail.[8] (Doc. #147, 18:3-5).

22       This court finds that plaintiff's statements while on the telephone constitute present sense

23   impressions under FRE 803(1). The alleged statements were describing or explaining an event or

24   condition. Further, the alleged statements were made contemporaneously enough with the alleged

25

26   [7] These alleged present sense impressions include: "'They're not telling me what happened to John;'" "'They're demanding I pay them $7,000;' and 'I don't know what happened,' or words to that effect." (Doc. # 147, 16:22-23).

27

28   [8] Plaintiff alleges she described "the condition of the cell and of her feelings at the time," while she was in jail and on the phone with them. (Doc. # 147, 18: 4-5).

James C. Mahan
U.S. District Judge

1    incidents to adequately reduce the chance of deliberate misrepresentation. Finally, the declarant

2    (plaintiff) had sufficient personal knowledge of the events she was describing to the three witnesses.

3    *See Bemis*, 45 F.3d at 1373.

4               **2.      Do the statements made by plaintiff to Karen Vogel when she discovered**

5                         **blood on the door qualify as a hearsay exception under FRE 803(2)?**

6               Under FRE 803(2), excited utterances "are not excluded by the rule against hearsay,

7    regardless of whether the declarant is available as a witness." FED.R.EVID. 803. An excited utterance

8    is a "statement relating to a startling event or condition, made while the declarant was under the

9    stress of excitement that it caused." FED.R.EVID. 803(2). The underlying theory behind excited

10   utterance "is simply that circumstances may produce a condition of excitement which temporarily

11   stills the capacity of reflection and produces utterances free of conscious fabrication. Spontaneity

12   is the key factor." FED.R.EVID. 803(2) advisory committee note.

13              The most significant practical difference between present sense impression and excited

14   utterance is the time lapse allowable between the event and statement. FED.R.EVID. 803(2) advisory

15   committee note. Like present sense impression, an excited utterance must be made nearly

16   contemporaneously with the described incident and with little opportunity for reflection. *See Bemis*,

17   45 F.3d at 1372. Furthermore, the declarant of an excited utterance must have first-hand knowledge

18   of the subject. *See id.* at 1373. However, time is not always the determinative factor, as the court may

19   also look to other factors like age and the characteristic of the event in order to determine if a

20   statement was still an excited utterance. *United States v. Rivera,* 43 F.3d 1291, 1296 (9th Cir. 1995)

21   (finding that a statement made 30 minutes after the event was still an excited utterance since the

22   declarant was 15 years old and the event was rape).

23              Here, the statements plaintiff made to Vogel while discovering blood on the door of her hotel

24   room are an exception to hearsay as an excited utterance. However, this court finds that the time

25   window for excited utterance is very narrow, as plaintiff's situation is easily distinguishable from

26   the adolescent in *Rivera.* Thus, to fall within the exception, only those statements very close in time

27   will qualify under the excited utterances hearsay exception.

28

**James C. Mahan**
**U.S. District Judge**

1

**3.     Conclusion**

2       The court declines to decide if this testimony is relevant, as relevancy is largely dependent

3   on the unpredictable flow of trial. (*See* doc. #130, 7) (defendant claiming that even if this court found

4   the testimony admissible under a hearsay exception it should be excluded under FRE 402 for lack

5   of relevancy). The court applies the same reasoning to prejudicial effect. However, the court would

6   be remiss if it did not express its concern regarding the probative value of this seemingly repetitive

7   evidence. *See* FED.R.EVID. 403 ("The court may exclude relevant evidence if its probative value is

8   substantially outweighed by a danger of . . . needlessly presenting cumulative evidence").

9       Nonetheless, the court finds that the testimony of Karen Vogel, Steve Conboy, and Pat Nanda

10  maybe admissible as long as their statements meet the aforementioned time and subject matter

11  constraints of the present sense impression and/or excited utterance hearsay exception.

12      Defendants' motion in limine no. 4 is DENIED.

13      **E.     Motion in limine 5 (doc. # 131)**

14      Defendants move to "exclude the testimony of Sergeant Oaks and any other witness as to the

15  hearsay statements and speculation as to the reason the district attorney dropped the charges against

16  plaintiff." (Doc. # 131, 4:12-14).

17      The motivation for defendants' request derives from one question during Sergeant Oaks'

18  deposition. Sergeant Oaks was asked, "do you know why no charges were filed in this case," and he

19  responded with his thoughts as to the district attorney's reasoning in not filing charges. (Doc. # 131,

20  4). Like motion in limine no. 4, defendants argue hearsay, but if not hearsay then lack of relevance,

21  and if not the first two then low probative value. (*See generally* doc. #131 *and* doc. # 130).

22      Plaintiff, in her opposition, seemingly gives examples of ways the district attorney's dropping

23  of charges could be introduced. (*See* doc. #147, 18). Additionally, the plaintiff seems to argue that

24  the dropping of charges falls under exception to hearsay FRE 803(8), public record. (*See* doc. #147,

25  18).

26      But, defendants are challenging the introduction of speculation from third parties as to why

27  charges were dropped. Nevertheless, the court recognizes that if the question is asked of anyone

28

**James C. Mahan**
**U.S. District Judge**

- 10 -

1  other than the district attorney, "Why did the district attorney fail to prosecute?,"a hearsay objection

2  or a FRE 602, lack of personal knowledge, objection is warranted.

3          Therefore, defendants' motion in limine no. 5 is GRANTED.

4          **F.       Motion in limine 6 (docs. # 132/133)**

5          Defendants move to "exclude any evidence, reference, or argument by [p]laintiff indicating

6  that [p]laintiff was handcuffed and/or arrested by Wynn Security." (Doc. # 133, 4:16-17). Defendant

7  argues that exclusion of this evidence under FRE 401, 402, and 403 is appropriate because the

8  evidence will be prejudicial, confusing to the jury, and unnecessarily time consuming. (Doc. # 133,

9  7).

10         Defendants contend that the time line of plaintiff's arrest is undisputed, and that plaintiff's

11 arguments challenging this time line are "without any evidentiary support." (Doc. # 133, 4:20).

12         FRE 401 says "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less

13 probable than it would be without the evidence; and (b) the fact is of consequence in determining

14 the action." FED.R.EVID. 401. Clearly, this evidence meets the low standard set out by FRE 401 and

15 is thus relevant.

16         FRE 402 says "relevant evidence is admissible unless any of the following provides

17 otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by

18 the Supreme Court." FED.R.EVID. 402. This leads to the one remaining rule that defendants claim

19 precludes the evidence in question. (Doc. #133, 7).

20         FRE 403 says, "[t]he court may exclude relevant evidence if its probative value is

21 substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing

22 the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

23 evidence." FED.R.EVID. 403.

24         As defendants pointed out, this court found in its order granting in part and denying in part

25 motions for summary judgment, a genuine issue of material fact existed as to who arrested and

26 placed plaintiff in handcuffs. (Doc. # 133, 4; *see also* doc. # 116). As such, the court is not inclined

27 to preclude evidence surrounding that question from being introduced by plaintiff. This evidence is

28

**James C. Mahan**
**U.S. District Judge**

1    not unfairly prejudicial, confusing, misleading, cumulative, or delaying.

2       Therefore, defendants' motion in limine no. 6 is DENIED.

3      **G.    Motion in limine 7 (doc. # 134)**

4       Defendants move to "exclude any evidence, reference, or argument by [p]laintiff suggesting

5    that she was 'paraded through the hotel' following her arrest." (Doc. # 134, 4:16-17). Defendants

6    argue for exclusion of this evidence under FRE 401, 402, and 403 because it will be highly

7    prejudicial. (Doc. # 134, 6).

8       Defendants contend that the word "paraded", "improperly characterize[s] the actions of

9    Metro officers in escorting [plaintiff] to the security room." (Doc. # 134, 6). Defendants argue that

10   the word "paraded" could potentially create images in the jurors' minds which do not coincide with

11   the fact that plaintiff was actually taken through the hotel via back routes as opposed to through more

12   public areas. (Doc. # 134, 7).

13      Plaintiff seems to oppose defendants on the grounds that regardless of public areas or non-

14   public areas, plaintiff was still "paraded" around in the hotel. (Doc. # 147, 21).

15      Since, defendants are once again moving under FRE 401, 402, and 403 the court will go

16   through a similar analysis as motion in limine no. 6.

17      FRE 401 says "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less

18   probable than it would be without the evidence; and (b) the fact is of consequence in determining

19   the action." FED.R.EVID. 401. Obviously, this evidence meets the low standard set out by FRE 401

20   and is therefore relevant.

21      FRE 402 says "relevant evidence is admissible unless any of the following provides

22   otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by

23   the Supreme Court." FED.R.EVID. 402. This leads to the one remaining rule that defendants assert.

24   (Doc. # 134, 6).

25      FRE 403 says, "[t]he court may exclude relevant evidence if its probative value is

26   substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing

27   the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

28

**James C. Mahan**
**U.S. District Judge**

evidence." FED.R.EVID. 403.

The court recognizes the potential connotation that "paraded" could create in a juror's mind. But plaintiff should have the ability to draw that picture if she can do so. If the court was to exclude just the word "paraded", a simple search through a thesaurus or dictionary by plaintiff could result in a multitude of alternatives.

Further, the court is not inclined to make a more sweeping ruling as defendants hint at in their final paragraph of the legal argument section. (*See* doc. # 134, 8:3-14). The disconnected jump defendants make from initially asking the court to exclude evidence regarding plaintiff being "paraded through the hotel" (*see* doc. #134, 4) to then asking the court to limit evidence in support of plaintiff's slander *per se* claim to just the one person in the security room (doc. # 134, 8) is unsupported.

Therefore, defendants' motion in limine no. 7 is DENIED.

**H.    Motion in limine 8 (doc. # 137)**

Defendants move the court to preclude plaintiff from providing testimony or documentation that supports her alleged damages claims. First, defendants ask the court to exclude evidence related to plaintiff's alleged financial losses. Second, defendants ask the court to exclude evidence that the plaintiff suffered damage to her reputation. Third, defendants ask the court to exclude evidence of plaintiff's medical treatment for physical and emotional damages. Fourth, defendants ask the court to exclude any and all evidence related to plaintiff's punitive damages claim. The court will address each request in turn.

First, defendants argue that plaintiff's evidence related to alleged financial losses should be excluded because plaintiff failed to provide a computation of damages as required by FRCP 26(a)(1). (Doc. # 137). Plaintiff argues that such a computation is unnecessary because plaintiff agreed to limit her damages to $500 before the magistrate judge. (Doc. # 148).

> THE COURT: Well, are you willing to stipulate to that? I mean, that would -- that -- it seems to me that you've solved a discovery problem if you're going to say that no more than $500 was lost.
> MR. KOSSACK: Yeah, I think we could stipulate to that.

1    (Doc. # 70, 30:4-11).

2          Based on plaintiff's representation,[9] defendants have not provided sufficient justification

3    for precluding evidence related to plaintiff's alleged financial losses of $500.00. Therefore,

4    defendants' first request is DENIED consistent with the foregoing.

5          Second, defendants ask the court to exclude evidence that the plaintiff suffered damage to

6    her reputation, because plaintiff has not shown any proof of damages. (Doc. # 137). Defendants

7    argue that a claim of slander requires proof of damages. (Doc. # 137). Defendants also argue that

8    because plaintiff showed no proof of damages that she should not be allowed to provide proof of

9    slander per se. However, plaintiff's claim for slander per se does not require proof of damages.

10   *K-Mart Corp. v. Washington*, 109 Nev. 1180, 1192-93 (1993) (*overruled in part on other*

11   *grounds by Pope v. Motel 6*, 121 Nev. 307 (2005)). "The imputation of [criminal behavior], by

12   words or by pantomime, if communicated to a third party, is unquestionably slander per se." *Id.*

13   at 1193. Therefore, because plaintiff's slander per se claim does not require evidence of damages,

14   the court will not entertain defendants' request. Defendants' second request is DENIED

15   consistent with the foregoing.

16         Third, defendants ask the court to exclude evidence of plaintiff's medical treatment for

17   physical and emotional damages. Defendants argue plaintiff should have provided an expert

18   witness for any claim that future pain and suffering are a probable consequence of this event.

19   *Lerner Shops v. Marin*, 83 Nev. 75, 79 (1967). Consistent with *Lerner Shops*, the court will

20   prohibit plaintiff from providing for any claim for future pain and suffering. However, the court,

21   at this juncture, will neither prohibit plaintiff from testifying as to any objective physical injuries

22   she has suffered as a result of the event nor as to the effect the event had on her life more

23   generally. Defendants' third request is DENIED consistent with the foregoing.

24         Fourth, defendants ask the court to exclude any and all evidence related to plaintiff's

25   punitive damages claim. Defendants argue that plaintiff has shown no evidence attesting to

26   _____

27   [9] This same representation is made in plaintiff's reply in support of her motion in limine. (Doc. # 155, 19:27-28).

28

**James C. Mahan**
**U.S. District Judge**

1  defendants' financial condition. (Doc. # 137). The court finds that this request more

2  appropriately addressed in motion in limine no. 11, *see infra* II.K. Defendants' fourth request is

3  DENIED as moot.

4          Therefore, defendants' motion in limine no. 8 is DENIED.

5          **I.       Motion in limine 9 (docs. # 135/143)**

6          Defendants move this court to exclude evidence and reference to disciplinary actions

7  taken against Tammy Rogers ("Rogers") as irrelevant and prejudicial. (Doc. # 143). Plaintiff

8  alleges that one of Rogers' write-ups shows that Rogers has a history of "coveting the finer

9  things." (Doc. # 148). This evidence, standing alone, may have little relevance to plaintiff's cause

10 of action for conversion/negligence. However, the relevance and probative value of this evidence

11 will be determined at trial based on the other evidence submitted.

12         Defendants' motion in limine no. 9 is DENIED.

13         **J.       Motion in limine 10 (doc. # 136)**

14         Defendants move this court to exclude an a wide range of evidence as prejudicial to

15 defendants. First, defendants argue that the court should prohibit all of plaintiff's demonstrative

16 exhibits not previously reviewed by defendants. Second, defendants argue the court should

17 preclude all references to facts not in evidence. Third, defendants argue that plaintiff's counsel

18 should be prohibited from stating an opinion on the credibility of witnesses. Fourth, defendants

19 argue that the court should preclude plaintiff from requesting a specific amount of non-economic

20 damages. Fifth, defendants argue that the court should prohibit all evidence not provided to

21 defendants during discovery. The court will address each request in turn.

22         First, defendants argue that the court should prohibit all of plaintiff's demonstrative

23 exhibits not previously reviewed by defendants. Demonstrative evidence is evidence used to

24 explain or illustrate other evidence already on the record. *Shuffle Master, Inc. v. MP Games LLC*,

25 553 F. Supp.2d 1202, 1209 (D. Nev. 2008) (citation omitted). The court ORDERS that the

26 parties exchange a list of demonstrative exhibits to be used at any point during the course of trial.

27 The party offering the demonstrative evidence must provide the opposing party sufficient time

28

**James C. Mahan**
**U.S. District Judge**

1   and opportunity to examine and pre-screen the exhibits prior to its use at trial. Defendants' first

2   request is GRANTED consistent with the foregoing.

3        Second, defendants argue that the court should preclude all references to facts not in

4   evidence. Defendants assert that plaintiff may attempt to comment on evidence that has been

5   previously excluded by the court. The court will not grant a motion in limine to reaffirm what is

6   already prohibited by the federal rules. Moreover, the court will not speculate as to what the

7   parties *may* say during the trial.[10] Therefore, defendants' second request is DENIED consistent

8   with the foregoing.

9        Third, defendants argue that plaintiff's counsel should be prohibited from stating an

10  opinion on the credibility of witnesses. Counsel must not provide a personal opinion as to the

11  veracity of a witness's testimony. *United States v. Kerr*, 981 F.2d 1050, 1053 (9th Cir. 1992). In

12  *Kerr*, the court found prosecutorial misconduct when the prosecutor repeatedly provided personal

13  opinions, vouching for government witnesses. *Id.* at 1054. This court adheres to the well

14  established rule that counsel representing the parties may not testify at trial. *Jones v. Chi.*, 610 F.

15  Supp. 350, 362 (N.D. Ill. 1984). Nonetheless, counsel may comment on evidence without

16  providing a personal opinion during closing arguments. Therefore, defendants' third request is

17  GRANTED consistent with the foregoing.

18       Fourth, defendants argue the court should preclude plaintiff from requesting a specific

19  amount of non-economic damages. Defendants argue the jury may inflate a possible award based

20  on a statement, which may be made by plaintiff's counsel, suggesting a specific award.

21  Defendants suggest this court should adopt the Second Circuit's disfavor for such statements.

22  *Consorti v. Armstrong World Indus.*, 72 F.3d 1003, 1016 (2d Cir. 1995). However, the Ninth

23  Circuit Civil Model Jury Instruction § 1.7 instructs the jury that "[a]rguments and statements by

24  lawyers are not evidence" and should not be considered as evidence. As such, the court finds this

25  jury instruction to be sufficient to address such statements. Therefore, defendants' fourth request

26  is DENIED consistent with the foregoing.

27  ───────────────

28       [10]The parties may object to any improper statement or evidence at trial.

**James C. Mahan**
**U.S. District Judge**

- 16 -

Fifth, defendants argue the court should prohibit all evidence not provided to defendants during discovery. The court will conduct the trial pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Evidence. The court expects the parties to adhere to these rules. The court will not grant a motion in limine to reiterate this expectation. Therefore, defendants' fifth request is DENIED consistent with the foregoing.

Defendants' motion in limine no. 10 is GRANTED in part and DENIED in part.

### K.      Motion in limine 11 (doc. # 138)

Defendants' motion in limine no. 11 asks the court to "exclude certain evidence, statements, and/or arguments that may be raised by counsel for [p]laintiff at the time of trial." (Doc. # 138, 4:11-12). Additionally, defendants request two things: exclusion of evidence relating to the punitive damages from being raised in the main case and trifurcation of the issue of punitive damages from the main case. (Doc. # 138, 4). In furtherance of these ends, defendants raise a multitude of arguments and constitutional concerns each of which will be addressed in more detail below. (*See generally* doc. # 138).

Plaintiff contests the instant motion primarily on three grounds. (*See* doc. # 149). However, plaintiff agrees with defendants as to trifurcation. (Doc. # 149, 19).

### 1.      Defendants seek to preclude certain types of evidence from main case

Defendants guess that plaintiff will present three categories of evidence which it argues will violate its constitutional rights. (Doc. # 138, 6). First, evidence involving defendants' conduct towards parties not part of this litigation. (Doc. # 138, 7). Second, "evidence of [defendants'] conduct outside of Nevada having no connection to the conduct that allegedly injured [p]laintiff." (Doc. # 138, 8:7-8). Third, evidence of defendants' "Non-Nevada financial condition." (Doc. # 138, 9:2).

### I.      Evidence regarding defendant's conduct towards parties not part of this litigation

Defendants anticipate plaintiff will attempt to bolster her argument by using claims of dissimilar non-parties in regards to "how prior security issues were handled" by Wynn. (Doc. #

James C. Mahan
U.S. District Judge

1  138, 7:17-18). Defendants argue that use of this presumed evidence by plaintiff would infringe

2  upon its constitutional rights as illustrated by *State Farm v. Campbell*, 538 U.S. 408 (2003).

3       Plaintiff asserts it has no intention of using evidence of a non-party unless that evidence is

4  very similar to the facts of this dispute. (*See* doc. # 149, 16). Plaintiff points out that defendant is

5  not moving to exclude any current evidence in particular, but only potential future evidence

6  which may or may not ever come to fruition. (Doc. # 149, 16).

7       This court agrees with both parties. On one hand, evidence of dissimilar conduct in order

8  to increase a punitive damages award is unfair. *See Campbell*, 538 U.S. at 422-24. On the other

9  hand, a ruling to exclude this type of evidence is better handled during trial, when more

10 information as to its relevance is available.

11      More on point than *Campell* is *Philip Morris USA v. Williams*, 549 U.S. 346 (2007).

12 *Phillip Morris* is clearer, narrower, and more recent than *Campbell* when it comes to evidence of

13 non-parties in relation in punitive damages. 549 U.S. 346 (2007). *Phillip Morris* held that the

14 Constitution's Due Process Clause does not allow a jury to base an award "in part upon its desire

15 to *punish* the defendant for harming persons who are not before the court (*e.g.*, victims whom the

16 parties do not represent)." 549 U.S. at 349 (emphasis in original). The Court made clear that "a

17 jury may not . . . use a punitive damages verdict to punish a defendant directly on account of

18 harms it is alleged to have visited on nonparties," except in two instances where harm to others

19 shows more reprehensible conduct.[11]

20      Thus, this court denies defendants' request to exclude plaintiff's potential evidence

21 regarding defendants' conduct towards parties not part of this litigation whether in regards to the

22 merits or punitive damages, as long as plaintiff's showing falls within the exceptions outlined in

23 *Phillip Morris.*

24

25

26     [11] The Court pointed out two methods a plaintiff may use to show harm to others in order to demonstrate reprehensibility. *Phillip Morris*, 549 U.S. at 355. First, "evidence of actual harm to nonparties can help to show that the

27 conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible." *Id.* Second, "counsel may argue in a particular case that conduct resulting in no harm to others

28 nonetheless posed a grave risk to the public, or the converse." *Id.*

**James C. Mahan**
**U.S. District Judge**

1
2

        **ii.**    **Evidence of defendant's conduct outside of Nevada with no**

                      **connection to the conduct that allegedly injured plaintiffs**

3        Defendant argues, once again under *Campbell*, that "Nevada cannot punish a defendant

4  for its conduct in other states or countries unless the claims of those allegedly injured in other

5  jurisdictions are joined with the plaintiff's claims and the Nevada court applies the laws of the

6  other jurisdictions to the out-of-state claims." (Doc. #138, 8:12-15).

7        Plaintiff alleges she has no plans to use evidence of conduct outside of Nevada. (Doc.

8  #149, 17).

9        Again this court agrees with both parties, and reiterates its points in relation to *Phillip*

10  *Morris* above. The court denies defendants' request to exclude evidence of conduct outside

11  Nevada.

12         **iii.**    **Evidence of defendant's non-Nevada financial condition**

13        Defendants argue that its constitutional rights will be infringed if their non-Nevada

14  financial condition is introduced.  (*See* doc. # 138, 9-12). They argue that "four unconstitutional

15  things," will happen if this type of evidence is allowed: (1) the Wynn will be punished for

16  conduct outside Nevada; (2) it will project a punitive rule into other jurisdictions; (3) it will

17  extract punishment from interstate and international commerce; and (4) the Wynn will be

18  punished based on financial condition of other business enterprises (Doc. # 138, 10:8-13).

19  Plaintiff opposes defendants' argument on a few different grounds. (*See* doc. #149, 17-18).

20        In 1988, the Nevada Supreme Court ruled that "the financial position of the defendant is

21  still relevant to the determination of the amount of the punitive damages award. The wealth of a

22  defendant is directly relevant to the size of an award, which is meant to deter the defendant from

23  repeating his misconduct as well as punish him for his past behavior." *Ainsworth v. Combined*

24  *Ins. Co. of America*, 104 Nev. 587, 593 (1988), *citing see Midwest Supply, Inc. v. Waters,* 89

25  Nev. 210 (1973). In *Ainsworth*, the "financial position" the Court referenced was the national

26  financial position of the defendant. *Id.* at 593 (the court figured that a near six million dollar

27  punitive damage award only amounted to five percent of defendant's 1985 net operating gain and

28

**James C. Mahan**
**U.S. District Judge**

1    only constitutes .4 percent of their 1985 total assets).

2         Eleven years later the Nevada Supreme Court reiterated this viewpoint in *Dillard Dept.*

3    *Stores, Inc. v. Beckwith,* 115 Nev. 372, 381 (1999), *cert. denied,* 120 S.Ct. 2744 (2000).[12] There

4    is nothing in the facts of *Beckwith* which distinguishes it enough from the facts presented here in

5    order to justify not following its precedent as to punitive damages. *See Beckwith,* 115 Nev. at

6    374-75 (plaintiff's claim arose out of an incident with her store and its manager and it was not

7    based on a nationwide systemic problem of defendant). However, the court recognizes that both

8    these cases were decided prior to *Campbell*, 538 U.S. 408 (2003).

9         Regardless, the court disagrees with the conclusions that defendants draw from their use

10   of *Campbell*. Defendants cite *Campbell* about six times in their argument. (*See* doc. #138, 9-12).

11   However, defendants' use of "nexus of the conduct" (doc. #138, 11:9) to conclude that "when

12   determining the amount of punitive damages to award, the focus of the analysis ought to be on

13   the effect of the conduct of the defendant in the state where the defendant is alleged to have

14   committed a bad act" is misplaced. (Doc. #138, 11:14-16).

15        The "nexus" spoken of on page 423-424 of *Campbell* is focused on whether evidence of a

16   non-party's interaction with the defendant can be used to persuade a jury of punitive damages.[13]

17   Much of *Campbell* is dedicated to answering that question. *See generally* 538 U.S. 408. When it

18   comes to not basing punitive damages on a company's overall wealth, *Campbell* is not silent, but

19   its main takeaway merely reiterates a point from *Gore* that, "the wealth of a defendant cannot

20   justify an otherwise unconstitutional punitive damages award." 508 U.S. at 427. Moreover,

21   _____

22        [12] "Dillard objected to the trial judge's decision to allow the nationwide worth, rather than just the worth of
     Dillard's Nevada, Inc., to determine the amount of punitive damages to award. We have previously allowed a nationwide

23   worth when a jury decides punitive damages. Specifically, we have recognized '[t]he wealth of a defendant is directly
     relevant to the size of an award, which is meant to deter the defendant from repeating his misconduct as well as punish

24   him for his past behavior.'" *Dillard Dept. Stores, Inc. v. Beckwith,* 115 Nev. 372 , 381 (1999) *citing Ainsworth v.
     Combined Ins. Co.,* 104 Nev. 587, 593 (1988).

25        [13] "The Campbells have identified scant evidence of repeated misconduct of the sort that injured them. Nor does
     our review of the Utah courts' decisions convince us that State Farm was only punished for its actions toward the

26   Campbells. Although evidence of other acts need not be identical to have relevance in the calculation of punitive
     damages, the Utah court erred here because evidence pertaining to claims that had nothing to do with a third-party lawsuit

27   was introduced at length. Other evidence concerning reprehensibility was even more tangential. For example, the Utah
     Supreme Court criticized State Farm's investigation into the personal life of one of its employees . . ." *Campbell*, 538

28   U.S. at 423-24.

**James C. Mahan**
**U.S. District Judge**

- 20 -

1    *Campbell*  quotes Justice Breyer's concurrence in *Gore* which says "'[Wealth] provides an open-

2    ended basis for inflating awards when the defendant is wealthy . . . That does not make its use

3    unlawful or inappropriate; it simply means that this factor cannot make up for the failure of other

4    factors.'" *Id.* at 428.

5         Based on Nevada precedent and relevant authority from the United States Supreme Court,

6    the court disagrees with defendants that use of its entire financial records as opposed to just its

7    Nevada financial records would be unconstitutional. Therefore, the court denies defendants'

8    motion to exclude evidence of defendants' non-Nevada financial position.

9                    **2.      Defendants seek to trifurcate the trial**

10        FRCP 42(b) "confers broad discretion upon the district court to bifurcate a trial, thereby

11   deferring costly and possibly unnecessary proceedings." *Hangarter v. Provident Life & Accident*

12   *Insurance Co.,* 373 F.3d 998, 1021 (9th Cir. 2004) (citation and quotation marks omitted).

13   However, the "normal procedure" is to try punitive liability and amount issues together, with

14   appropriate instructions making clear the difference, since the evidence on these issues "usually

15   overlaps substantially." *Id.* (citation and quotation marks omitted).

16        The main limitation on a district court's ability to bifurcate liability and damages is

17   constitutional: the court must preserve any federal right to a jury trial. FED.R.CIV.P. 42(b). In

18   considering a motion to bifurcate trial, courts have weighed the factors of convenience, prejudice,

19   judicial economy, risk of confusion, and whether the issues are clearly separable. *See* William W.

20   Schwarzer *et al.*, *Federal Civil Procedure Before Trial* § 16:160.4 (2011). Finally, a decision to

21   bifurcate is reviewed on appeal for abuse of discretion. *Hirst v. Gertzen,* 676 F.2d 1252, 1261

22   (9th Cir. 1982).

23        Defendants seek to trifurcate for a variety of reasons. Defendants believe that one trial

24   would prejudice the jury, confuse the jury, and waste judicial resources. (*See* doc. # 138, 12-19).

25   Plaintiff does not oppose defendants' request to trifurcate citing the Nevada rule.[14] (Doc. #149,

26   _____

27   [14] Nevada Revised Statute 42.005(3) reads: "If punitive damages are claimed pursuant to this section, the trier
     of fact shall make a finding of whether such damages will be assessed. If such damages are to be assessed, a subsequent
     proceeding must be conducted before the same trier of fact to determine the amount of such damages to be assessed. The
28   trier of fact shall make a finding of the amount to be assessed according to the provisions of this section. The findings

James C. Mahan
U.S. District Judge                                    - 21 -

19).

Nevertheless, this trial will not be trifurcated. However, the trial will be conducted in two phases. In phase one, any evidence of defendants' financial condition is excluded and the jury will be asked whether there is clear and convincing evidence that defendants are guilty of malice, oppression, or fraud. If the jury returns a verdict in plaintiff's favor on liability and finds malice, oppression, or fraud, then the case will proceed to phase two in which the same jury considers what amount of punitive damages to award. *See also* NEVADA JURY INSTRUCTIONS 12PD.1-.2 (Publications Committee of the State Bar of Nevada, 2011).[15]

Therefore, defendants' request for trifurcation is DENIED.

**III.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants Wynn Las Vegas, LLC and Tammy Rogers' motions in limine (docs. # 127-138) be, and the same hereby are, GRANTED in part and DENIED in part.

THEREFORE IT IS ORDERED that defendants' motion in limine no. 1 (doc. # 127) be, and the same hereby is, GRANTED in part and DENIED in part consistent with section II.A. *supra*.

THEREFORE IT IS ORDERED that defendants' motion in limine no. 2 (doc. # 128) be, and the same hereby is, GRANTED consistent with section II.B. *supra*.

THEREFORE IT IS ORDERED that defendants' motion in limine no. 3 (doc. # 129) be, and the same hereby is, DENIED consistent with section II.C. *supra*.

THEREFORE IT IS ORDERED that defendants' motion in limine no. 4 (doc. # 130) be, and the same hereby is, DENIED consistent with section II.D. *supra*.

---

required by this section, if made by a jury, must be made by special verdict along with any other required findings. The jury must not be instructed, or otherwise advised, of the limitations on the amount of an award of punitive damages prescribed in subsection 1." Nev. Rev. Stat. Ann. § 24.005 (2011).

[15] The court recognizes that the parties have not yet engaged in discovery with respect to punitive damages. (*See* doc. # 10). The parties shall engage in limited discovery as to defendants' financial worth as directed by the court.

James C. Mahan
U.S. District Judge

1   THEREFORE IT IS ORDERED that defendants' motion in limine no. 5 (doc. # 131) be,

2   and the same hereby is, GRANTED consistent with section II.E. *supra*.

3   THEREFORE IT IS ORDERED that defendants' motion in limine no. 6 (docs. #

4   132/133) be, and the same hereby is, DENIED consistent with section II.F. *supra*.

5   THEREFORE IT IS ORDERED that defendants' motion in limine no. 7 (doc. # 134) be,

6   and the same hereby is, DENIED consistent with section II.G. *supra*.

7   THEREFORE IT IS ORDERED that defendants' motion in limine no. 8 (doc. # 137) be,

8   and the same hereby is, DENIED consistent with section II.H. *supra*.

9   THEREFORE IT IS ORDERED that defendants' motion in limine no. 9 (docs. #

10  135/143) be, and the same hereby is, DENIED consistent with section II.I. *supra*.

11  THEREFORE IT IS ORDERED that defendants' motion in limine no. 10 (doc. # 136) be,

12  and the same hereby is, GRANTED in part and DENIED in part consistent with section II.J.

13  *supra*.

14  THEREFORE IT IS ORDERED that defendants' motion in limine no. 11 (doc. # 138) be,

15  and the same hereby is, DENIED consistent with section II.K. *supra*.

16

17

18

19  DATED April 18, 2013.

20

21  _____

22  **UNITED STATES DISTRICT JUDGE**

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**